THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MARGARET T. BROOKS,<br><br>Plaintiff,<br><br>v.<br><br>SEATTLE HOUSING AUTHORITY,<br><br>Defendant. | CASE NO. C12-0878-JCC<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on the motion of Defendant Seattle Housing Authority ("SHA") for summary judgment (Dkt. No. 46), Plaintiff Margaret Brooks's opposition (Dkt. No. 50),[1] and SHA's reply (Dkt. No. 51). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS the motion in part and DENIES it in part for the reasons explained herein.

I.   BACKGROUND

Since 1994, Plaintiff Margaret Brooks has resided at Olympic Place Apartments, which are owned and operated by Defendant. (Dkt. No. 21 at 2.) In her amended complaint, Ms. Brooks states that she is a "64 year-old[2] African-American mixed Cherokee Indian" who suffers from a

---

[1] While Ms. Brooks filed her opposition brief on April 21, 2015, one day after the deadline established by the Court, her opposition is considered here. *See Draper v. Coombs*, 792 F.2d 915, 924 (9th Cir. 1986) (pro se litigant afforded "great leniency" in evaluating his compliance with the "technical rules of civil procedure").
[2] At the time of this order, Ms. Brooks is 67 years old. (Dkt. No. 50 at. 1.)

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT
PAGE - 1

number of ailments, leaving her disabled. (*Id.*) Ms. Brooks alleges that Defendant SHA discriminated against her based on her race and disability in violation of the Fair Housing Act ("FHA"), 42 U.S.C. § 3601, et seq., and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq. (*Id*. at 1.) This intentional discrimination, Ms. Brooks alleges, has "lead to her declining health including aggravating her blindness and other health issues." (*Id.* at 4.)

Ms. Brooks has had difficult relationships with her neighbors. Dozens of complaints have been filed against Ms. Brooks based on "rude behavior, foul language, name-calling, loud music and yelling within apartment units, and threats of physical harm." (Dkt. No. 47 at 3.) In May 2000, Ms. Brooks and two of her neighbors were issued a lease violation notice based on an ongoing feud. (*Id.*) The feuding neighbors wrote threats on each other's apartment doors, jammed locks, dumped garbage in front of apartments, and poured syrup on apartment doors. (*Id.*) Ms. Brooks denies involvement (*see* Dkt. No. 50 at 3), though documentation from SHA indicates that neighboring residents report that she and the two others "were [all] partly responsible for these activities." (Dkt. No. 47 at 3.)

Due to her health concerns, Ms. Brooks requested that SHA provide her with increased lighting in her apartment as well as a new bathtub. (Dkt. No. 50-1 at 39.) In response, SHA offered to transfer her to a different apartment in Olympic West or to an apartment in a different building. (Dkt. No. 47 at 6–7.) SHA explained that installation of a bathtub in Olympic West is not possible, although if Ms. Brooks would consider transferring to another building she could be provided with one. (Dkt. No. 47 at 6.) Ms. Brooks refused; she preferred to remain in the unit she was already familiar with, particularly as her vision impairment would make such an adjustment more difficult for her. (Dkt. No. 50 at 9.) While the accommodation for lighting was ultimately approved, (*see* Dkt. No. 50-1 at 56), the request took more than two years to process, and improved lighting has yet to be installed. (Dkt. No. 47 at 5–7.)

The delayed lighting accommodation request has been complicated by Ms. Brooks's relationship with SHA. Ms. Brooks's initial request was apparently lost, and the parties have

struggled to meet to discuss lighting installation. (Dkt. No. 47 at 5–7.) SHA Senior Property Manager Lori Baird has provided Ms. Brooks with her personal cell phone number and visited Ms. Brooks's unit to look at her lights. (Dkt. No. 50 at 4–5, 9.) Ms. Brooks indicates that she "did not feel it was professional to call her on her cell phone and wanted the calls to come to the office." (Dkt. No. 50 at 5.)

On November 23, 2012 Ms. Brooks filed an amended complaint claiming that the SHA acted discriminatorily by singling her out amongst white residents for investigation of complaints and by denying her requests for accommodation on account of her vision problems, violating the FHA and ADA. (Dkt. No. 21.) The Court has previously granted summary judgment in favor of the Defendant on the issue of punitive damages. (Dkt. No. 38.) The parties attended pro bono mediation in May of 2014 and were unable to reach settlement. (Dkt. Nos. 40 & 42.)

## II. DISCUSSION

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1060 (9th Cir. 2002) (citing *Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 248 (1986)). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). The nonmoving party must rely exclusively on admissible evidence to establish such specific facts in opposition to the moving party's motion. *Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir. 2002). In other words, the Plaintiff "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

### A.   FHA Racial Discrimination Claim

The FHA prohibits discrimination "against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b). The Ninth Circuit analyzes FHA disparate treatment claims under the three-stage framework set forth in the *McDonnell Douglas/Burdine* test. *Gamble v. City of Escondido*, 104 F.3d 300, 305 (9th Cir. 1997).

The *McDonnell Douglas* framework first requires a prima facie showing that: "(1) plaintiff is a member of a protected class; (2) plaintiff applied for [a benefit or treatment] and was qualified to receive it; (3) the [benefit or treatment] was denied despite being qualified; and (4) defendant approved [the benefit or treatment] for a similarly situated party during a period relatively near the time plaintiff was denied [the benefit or treatment]." *Gamble*, 104 F.3d at 305. After the plaintiff proves her *prima facie* case, the burden shifts to the defendant to articulate a "legitimate, nondiscriminatory reason for its action." *Id.* Finally, if the defendant has carried its burden, the plaintiff must then prove, by a preponderance of the evidence, that the reason asserted by the defendant is a "mere pretext." *Id.*

A *McDonnell Douglas* prima facie case is not the equivalent of a finding of actual discrimination, but rather creates an inference of discriminatory animus that the action was more likely than not based on impermissible considerations. *See Sanghvi v. City of Claremont*, 328 F.3d 532, 537 (9th Cir. 2003) (quoting *Gay v. Waiters' & Dairy Lunchmen's Union, Local No. 30*, 694 F.2d 531, 546 (9th Cir. 1982)). A prima facie case under McDonnell Douglas is one in which "the plaintiff has met his immediate burden of production, but not necessarily his ultimate burden of persuasion." *Id.* (quoting *Gay*, 694 F.3d at 543 n. 10).

Ms. Brooks alleges that SHA treated her differently because of her race. (Dkt. No. 21 at 3–4.) She claims that SHA has a pattern of ignoring her complaints and reprimanding her for complaints against her made by white tenants. (*Id.*) For example, after one dispute with a neighbor, Ms. Brooks claims that Defendant posted a "10 day notice to comply or vacate" on her

1  door but did not post a similar notice on her neighbor's door. (Dkt. No. 50 at 7.) Ms. Brooks
2  stated that she "do[es] not believe many neighbors receive these notices because it would have
3  been posted on their door and seen by others." (*Id*).

4  Ms. Brooks also alleges that her requests for reasonable accommodations for her
5  disability have been ignored or acted upon slowly, while the requests of white tenants have been
6  granted.[3] (Dkt. No. 50 at 7.) Ms. Brooks first requested an accommodation for increased lighting
7  in her apartment responsive to her glaucoma in November 2012. (Dkt. No. 50 at 40.) Defendant
8  did not approve the request until May 22, 2014. (Dkt. No. 50 at 56.) In support of her disparate
9  treatment claim, Brooks stated: "I don't believe other tenants are treated in this way when
10 requesting accommodations." (Dkt. No. 50 at 9.)

11 Under the first step of the *McDonnell Douglas* framework, Ms. Brooks satisfies some,
12 but not all, of her prima facie case. (1) First of all, she is a member of a protected class based on
13 her race. *See* 42 U.S.C. § 3604(b) (identifying racial minorities as a protected class). (2) Second,
14 Ms. Brooks has produced sufficient facts to show that she requested benefits she was qualified to
15 receive; as a resident of a property managed by SHA, Ms. Brooks was entitled to avail herself of
16 their complaint process and she did so several times throughout her tenancy. (Dkt. No. 50 at 10–
17 35.) (3) Third, Ms. Brooks has produced sufficient facts to show that due to her glaucoma she
18 was qualified for a reasonable accommodation. (Dkt. No. 50 at 35, 37, 43–45.)

19 Ms. Brooks has *not* produced any evidence of the fourth step of the prima facie case: to
20 demonstrate that the SHA treated a similarly-situated comparator who was not a member of her
21 protected class differently. Ms. Brooks has filed at least twenty-five complaints with SHA since
22 the beginning of her tenancy. (Dkt. No. 50 at 10–34.) Defendant has shown that it responded to
23 Ms. Brooks's complaints by interviewing the parties involved as well as witnesses. (Dkt. No. 51

---

[3] The Court discusses Ms. Brooks's reasonable accommodation claims in more detail below. These claims are discussed here to the extent that Ms. Brooks has a perception of racial disparity in requests for accommodation.

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT
PAGE - 5

at 2.) Ms. Brooks has provided no evidence that her complaints were ignored.[4] Nor has Ms. Brooks provided evidence—save her own inadmissible speculation—that the complaints of similarly-situated white tenants were treated differently by SHA.

Given the absence of admissible evidence indicating a genuine issue of material fact as to whether Ms. Brooks was treated differently than SHA's white tenants, the Court hereby GRANTS defendant's motion for summary judgment on Ms. Brooks's FHA racial discrimination claim.

### B. FHA Disparate Impact Claim

Ms. Brooks brings a Title VII claim against SHA under a disparate impact theory arguing that SHA's practices had a discriminatory effect on persons with disabilities. (Dkt. No. 50, p. 10.) To support her claim, Ms. Brooks asserts that SHA had a pattern of ignoring her requests despite its awareness of her disability. (*Id.*) "To establish a prima facie case of disparate impact under the FHA, a plaintiff must show at least that the defendant's actions had a discriminatory effect." *Pfaff v. U.S. Dep't of Hous. & Urban Dev.*, 88 F.3d 739, 745 (9th Cir. 1996) (internal quotation marks omitted). Ms. Brooks has produced no evidence to show that SHA's practices had an actual discriminatory effect or disproportionate impact on members of her protected class. Accordingly, the Court grants summary judgment for SHA with regard to Ms. Brooks's disparate impact claim.

### C. FHA Reasonable Accommodation Claim

Ms. Brooks alleges that SHA failed to provide reasonable accommodations "necessary for her visual and health handicaps to allow her equal opportunity to use and enjoy her unit and quality of life." (Dkt. No. 21 at 4.) The FHA makes it unlawful to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of

---

[4] To the contrary, there is evidence before the Court that Senior Property Manager Lori Baird visited Ms. Brooks's apartment and provided her personal cell phone number in order to provide assistance to Ms. Brooks. (Dkt. No. 50 at 4–5, 9.) As is discussed below, Ms. Brooks refused an offer to move to another apartment, and her request for lighting accommodations was ultimately approved, albeit slowly. (Dkt. No. 47 at 6–7.)

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT
PAGE - 6

services or facilities in connection with such dwelling, because of a handicap." 42 U.S.C. § 3604(f)(2). The Act also prohibits "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). To prove a reasonable accommodation claim, a plaintiff must show:

> (1) that the plaintiff or his associate is handicapped within the meaning of 42 U.S.C. § 3602(h); (2) that the defendant knew or should reasonably be expected to know of the handicap; (3) that accommodation of the handicap may be necessary to afford the handicapped person an equal opportunity to use and enjoy the dwelling; (4) that the accommodation is reasonable; and (5) that defendant refused to make the requested accommodation.

*DuBois v. Ass'n of Apartment Owners of 2987 Kalakaua*, 453 F.3d 1175, 1179 (9th Cir. 2006). Ms. Brooks has produced facts sufficient to satisfy the first four elements of her reasonable accommodation claim: (1) she suffers from glaucoma and is visually impaired;[5] (2) Defendant has been aware of her condition for several years due to her complaints;[6] (3) Ms. Brooks has provided testimony regarding how the dim lighting exacerbates her difficulty seeing in her unit, and (4) the lighting accommodation request is reasonable.[7] While SHA ultimately approved the request for increased lighting, it has yet to be installed.

The remaining question is whether the delay in the implementation of the accommodation can properly be characterized as a refusal to accommodate in violation of the FHA. A defendant's unreasonable delay in granting an accommodation can constitute a constructive denial. *See Prindable v. Ass'n of Apartment Owners of 2987 Kalakaua*, 304 F. Supp. 2d 1245, 1258 (D. Haw. 2003) (quoting *Groome Resources Ltd., L.L.C. v. Parish of Jefferson*, 234 F.3d

---

[5] Her glaucoma renders her physically impaired and, therefore, "handicapped" under 42 U.S.C. § 3604(h).
[6] (*See* Dkt. No. 50-1 at 39–40.)
[7] The fact that SHA has granted her request for lighting bolsters the finding that it is a reasonable request. (Dkt. No. 50-1 at 56.) SHA expressed that the bathtub requested by Ms. Brooks would be impossible to install in her unit, and the Court does not treat the bathtub request as reasonable. (Dkt. No. 47 at 6.)

192, 199 (5th Cir. 2000)) ("The denial can be either actual or constructive, 'as an indeterminate delay has the same effect as an outright denial.'"), *aff'd sub nom. DuBois v. Ass'n of Apartment Owners of 2987 Kalakaua*, 453 F.3d 1175 (9th Cir. 2006). The determination of whether a "request for a reasonable accommodation is constructively denied by unreasonable delay is highly fact-specific, and is made on a case-by-case basis." *Logan v. Mateevskii*, No. 10-cv-9247(KMK), 2014 WL 5025953, at *28 (S.D.N.Y. Sept. 29, 2014).

On July 16, 2012, SHA sent a letter to Brooks informing her that she owed $57.19 in light bulb charges that were more than ninety days overdue. (Dkt. No 50-1 at 75.) Ms. Brooks alleges that she asked SHA for increased lighting, but that SHA lost this original request.[8] (Dkt. No. 50 at 4.) Ms. Brooks resubmitted her request for increased lighting in her unit on November 8, 2012. (Dkt. No. 50-1 at 5.) On July 10, 2013, eight months after Ms. Brooks filed her request, SHA asked that Ms. Brooks "clearly explain[] how [her] request for extra lighting connects with [her] disability" and "what steps [she] has taken to try to accommodate [her] own needs for extra lighting in [her] unit, such as floor lamps, and why this lighting did not meet [her] needs." (*Id.* at 41.) Ms. Brooks responded by letter five days later, explaining that seeing in her unit was becoming increasingly difficult due to her glaucoma, purchasing lighting was financially unmanageable given her fixed income, and that she will not sign a release of information from her eye-doctor because SHA had lost her original papers. (*Id.* at 45.) Ms. Brooks also produced a note from her doctor stating that she suffered from glaucoma. (*Id.* at 37) SHA approved Ms. Brooks's request for accommodations on May 22, 2014, nearly eighteen months after Ms. Brooks submitted it. (*Id.* at 56.)

On March 13, 2015, eleven months later, Lori Baird spoke with Ms. Brooks and offered to meet with her to discuss the lighting upgrades. (Dkt. No. 51 at 5.) In a March 16, 2015 declaration, Ms. Baird wrote that, "[s]o far Ms. Brooks has not been willing to meet with me for

---

[8] It is unclear if and when Ms. Brooks submitted her original request, as the record before the Court contains only a subsequent request that was apparently resubmitted. (*Id.* at 40.)

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT
PAGE - 8

this purpose. I have communicated to her that I remain willing to work with her toward improving the lighting and that she may contact with me when she wishes to discuss this." (Dkt. No. 47 at 6.) Ms. Brooks stated in her April 21, 2015 declaration that Ms. Baird came to her unit to inspect the lighting with a third person some time after her request was approved. (Dkt. No. 50 at 8–9.) It is unclear whether, during the inspection that Ms. Brooks refers to, the parties discussed the details of installing additional lighting. In her March 26, 2015 declaration, Kim Barr, a Seattle Outreach Case Manager, wrote: "I observed dim lighting in Ms. Margaret Brook's [sic] apartment." (Dkt. No. 50-1 at 57.)

In sum, Ms. Brooks requested increased lighting in her unit in November 2012, and as of the writing of this order, nearly two and a half years later, she has yet to receive that accommodation. Courts have found constructive denial arising from much shorter delays. *See Scoogins v. Lee's Crossing Homeowners Ass'n*, 718 F.3d 262, 271–72 (4th Cir. 2013) (finding constructive denial at fifteen months); *Groome Resources*, 234 F.3d at 199–200 (a Fifth Circuit case finding constructive denial at 127 days); *Astralis Condo. Ass'n v. Sec'y U.S. Dep't of Hous. & Urban Dev.*, 620 F.3d 62, 68–69 (1st Cir. 2010) (finding constructive denial at one year). In construing the facts in the light most favorable to the nonmoving party, this Court therefore concludes that Ms. Brooks has produced sufficient facts to indicate that there is a genuine issue of material fact as to whether Defendant failed to provide her with reasonable accommodations in violation of the FHA. Accordingly, summary judgment on this claim is DENIED.

### D. ADA Reasonable Accommodation Claim

Ms. Brooks also brings a reasonable accommodation claim under the ADA which provides, in relevant part, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To prove a reasonable accommodation claim under the ADA a plaintiff must show: "(1) he is a 'qualified individual with a disability'; (2) he was either excluded from participation in or

denied the benefits of a public entity's services, programs or activities, or was otherwise discriminated against by the public entity; and (3) *such exclusion, denial of benefits, or discrimination was by reason of his disability.*" Weinreich v. Los Angeles Cnty. Metro. Transp. Auth., 114 F.3d 976, 978 (9th Cir. 1997) (emphasis in original). "The duty to provide reasonable accommodations under the ADA . . . arises only when a policy discriminates *on the basis of disability.*" *Id.* (emphasis in original) (internal quotation marks omitted). As the Court concluded in its discussion of Ms. Brooks's disparate treatment claim above, she has produced no evidence that Defendant has discriminated against her on the basis of her disability. While Ms. Brooks's reasonable accommodation claim brought under the FHA survives summary judgment, her claim brought under the ADA cannot because the ADA requires a showing of intentional discrimination and there remains no genuine dispute of material fact—supported by admissible evidence—that such discrimination existed. The Court therefore GRANTS summary judgment for the defendant with regard to this claim.

### III.     CONCLUSION

For the foregoing reasons, Defendant's motion for Summary Judgment (Dkt. No. 46) is GRANTED in part and DENIED in part. Plaintiff's sole surviving claim, for a violation of the FHA for denial of a reasonable accommodation, will be resolved at the BENCH trial set for **June 15, 2015 at 9:30 a.m.** At the bench trial, the Court will expect to hear from the parties **solely** on two questions: (1) whether SHA's delay in providing Ms. Brooks her requested lighting accommodation constitutes a denial of a reasonable accommodation under the Fair Housing Act, and (2) if so, determining the appropriate relief.

The parties are to submit their proposed pretrial order by June 5, 2015. Trial briefs are due by June 10, 2015. The parties are to submit their proposed findings of fact and conclusions of law—solely with regard to the fact-specific question of whether a denial of a reasonable accommodation under the FHA occurred—on or before June 12, 2015.

//

1     DATED this 26th day of May 2015.

                                                                                            *[signature: John C. Coughenour]*

                                                      John C. Coughenour
                                                      UNITED STATES DISTRICT JUDGE

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT
PAGE - 11